## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Marvin B. Dinsmore, *et al.*, on behalf of themselves, and all others similarly situated, <br><br>                Plaintiffs, <br><br> v. <br><br> ONEOK Field Services Company, L.L.C., <br><br>                Defendant. | Case No. 22-CV-73-GKF-CDL |

## PLAINTIFFS' UNOPPOSED MOTION
## TO CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES,
## TO PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT,
## TO APPROVE THE FORM AND MANNER OF NOTICE, AND
## TO SET A DATE FOR A FINAL FAIRNESS HEARING

Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

*–and–*

James U. White, Jr., OBA #9545
WHITE, COFFEY AND FITE, P.C.
P.O. Box 54783
Oklahoma City, Oklahoma 73154
(405) 842-7545
jwhite@wcgflaw.com

**COUNSEL FOR PLAINTIFFS**

# TABLE OF CONTENTS

Table of Contents ................................................................................................... i

Table of Authorities............................................................................................... ii

Introduction ......................................................................................................... 1

Summary of the Litigation ................................................................................... 2

Argument & Authority ......................................................................................... 3

    A.  The Court Should Certify the Settlement Class for Settlement Purposes ................. 3

        1.  Numerosity ................................................................................. 4

        2.  Commonality............................................................................... 5

        3.  Typicality ................................................................................... 6

        4.  Adequacy of Representation........................................................ 7

        5.  Predominance ............................................................................. 8

        6.  Superiority.................................................................................. 9

    B.  The Court Should Grant Preliminary Approval of the Proposed Settlement............10

        1.  Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class ..............11

        2.  The Proposed Settlement Was Negotiated at Arm's Length........................12

        3.  The Relief Provided for the Class Is Adequate, Taking into Account: ..............13

            i.  The Costs, Risks, and Delay of Trial and Appeal ...................13

            ii.  The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Members' Claims.......................14

           iii.  The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment........................................15

           iv.  Any Agreement Required to be Identified under Rule 23(e)(3)........................................15

        4.  The Settlement Treats Class Members Equitably Relative to Each Other ..............16

    C.  The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class........................16

    D.  Appointment of JND Legal Administration as Settlement Administrator is Proper.....................18

Conclusion.........................................................................................................19

i

# TABLE OF AUTHORITIES

## Cases

*Amoco Prod. Co. v. Fed. Power Comm'n,*
  465 F.2d 1350 (10th Cir. 1972) ....................................................................10

*Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.,*
  275 F.R.D. 325 (D. Kan. 2011)...................................................................... 9

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.,*
  167 F. Supp. 2d 1216 (D. Colo. 2001) ........................................................10

*CGC Holding Co., LLC v. Hutchens,*
  773 F.3d 1076 (10th Cir. 2014) ..................................................................... 8

*Cline v. Sunoco, Inc. (R&M),*
  333 F.R.D. 676 (E.D. Okla. 2019) ...........................................................4, 6

*Deitrich v. Enerfin Resources I Limited Partnership, et al.,*
  No. 20-CV-084-KEW (E.D. Okla. 2022)....................................................15

*DG v. Devaughn,*
  594 F.3d 1188 (10th Cir. 2010) .............................................................3, 5, 6

*Hay Creek Royalties, LLC v. Roan Res. LLC,*
  No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021) ..........................................5, 14

*Horn v. Associated Wholesale Grocers, Inc.,*
  555 F.2d 270 (10th Cir. 1977) ...................................................................... 4

*In re Motor Fuel Temperature Sales Practices Litig.,*
  271 F.R.D. 263 (D. Kan. 2010)......................................................... 3, 10, 11

*In re Urethane Antitrust Litig.,*
  768 F.3d 1245 (10th Cir. 2014) ..................................................................... 8

*Lucas v. Kmart Corp.,*
  234 F.R.D. 688 (D. Colo. 2006)..................................................... 10, 13, 16

*McKnight Realty Co. v. Bravo Arkoma, LLC,*
  No. 20-CV-428-KEW (E.D. Okla. 2022)..................................................5, 15

*McNeill v. Citation Oil & Gas Corp.,*
  No. 17-CIV-121-RAW (E.D. Okla. 2019) ....................................................15

*Milonas v. Williams,*
  691 F.2d 931 (10th Cir.1982) ....................................................................... 5

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306, 314 (1950) .............................................................................16

*Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.,*
  No. 19-CV-514-JFH-JFJ (N.D. Okla.) ......................................................5, 14

*Reed v. GM Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...................................................................12

*Reirdon v. XTO Energy Inc.*,
   No. 16-CV-00087-KEW (E.D. Okla. 2018) ................................................ 5

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
   749 F.2d 1451 (10th Cir. 1984) ...............................................................10

*Tennille v. Western Union Co.*,
   785 F.3d 422 (10th Cir. 2015) .................................................................. 3

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ..........................................................................5, 8

*Underwood, et al. v. NGL Energy Partners LP*,
   No. 21-CV-135-CVE-SH (N.D. Okla. 2023) ..........................................5, 14

**Statutes**

OKLA. STAT. tit. 52, § 570.10 ................................................................*passim*

**Rules**

FED. R. CIV. P. 23 ....................................................................................*passim*

**Secondary Sources**

Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10 (5th ed. 2011)................................... 5

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004).............................................10

**INTRODUCTION**

Plaintiffs[1] have obtained an outstanding recovery for the Settlement Class. Specifically, Plaintiffs have reached a settlement with ONEOK Field Services Company, L.L.C. ("Defendant") worth $850,000.00 in cash for Plaintiffs' class claims for statutory interest owed on late payments of oil-and-gas proceeds under Oklahoma law. Additionally, Plaintiffs have obtained future benefits for the Settlement Class by obtaining an agreement from Defendant that it will implement procedures to calculate and pay interest without a demand.

Having reached this agreement with Defendant and recovery for the Settlement Class, Plaintiffs now respectfully request that the Court preliminarily approve the Settlement. Specifically, through this Motion, Plaintiffs request the Court: (1) certify the Settlement Class for Settlement purposes; (2) preliminarily approve the Settlement; (3) appoint Plaintiffs as Class Representatives for the Settlement Class; (4) appoint Reagan E. Bradford, Ryan K. Wilson, and James U. White as Co-Lead Class Counsel for the Settlement Class; (5) approve the form and manner of the proposed Notice; (6) appoint a Settlement Administrator; and (7) set a hearing date for final approval of the Settlement and application for an award of Plaintiffs' Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and Case Contribution Awards to Plaintiffs.[2] Plaintiffs and Defendant have agreed to the form of the Preliminary Approval Order, which is Exhibit 1 to the attached Settlement Agreement (**Ex. 1**) and which Plaintiffs will submit to the Court contemporaneously with the filing of this motion.

---

[1] "Plaintiffs" refers to Marvin B. Dinsmore and Sheridan Downey, III, as Administrators of the Estate of David D. Dinsmore and the Estate of Margaret D. Dinsmore.

[2] Unless otherwise defined herein, Plaintiffs incorporate by reference the defined terms contained in the Settlement Agreement. *See* **Ex. 1**.

## SUMMARY OF THE LITIGATION

Plaintiffs initiated this case on February 16, 2022, alleging that Defendant violated Oklahoma's Production Revenue Standards Act, OKLA. STAT. tit. 52, § 570.10(D) ("PRSA"), by failing to pay statutory interest owed on the payment of oil-and-gas proceeds made outside of the timelines set out in the PRSA. *See* Doc. 2. Defendant filed its answer on March 10, 2022. Doc. 9.

Plaintiffs issued their first set of written discovery requests to Defendant on March 24, 2022.The parties conferred and filed a joint status report on April 6, 2022. Doc. 13. The Court then entered a scheduling order on April 8, 2022. Doc. 14. ONEOK served its written discovery responses on May 22, 2022. The Court issued the Stipulated Protective Order on May 24, 2022. Doc. 16. Over the following months, the parties engaged in discovery practice, conferring multiple times on discovery. During these conferrals, the parties also discussed, from an early stage in the case, the prospect of exploring early resolution, including the data and time required to analyze potential damages.

Defendant provided three volumes of discovery targeted at allowing the parties to analyze potential classwide damages. Plaintiffs engaged an accounting consultant to analyze the data provided by Defendant and to arrive at a preliminary classwide damages model. Over the following months, the Parties' consultants shared feedback and questions on specifics of the damages model. The Parties then began negotiating a classwide settlement and ultimately reached an agreement in principle on a classwide settlement, which included a cash payment of $850,000 and future benefits regarding the payment of statutory interest without first awaiting a demand. *See* Doc. 19. The Parties have since worked to memorialize their agreement

into a formal Settlement Agreement, which they have now completed and which is attached as **Exhibit 1** to this Motion.

**ARGUMENT & AUTHORITY**

**A.    The Court Should Certify the Settlement Class for Settlement Purposes**

In reviewing a proposed settlement for a putative class, the court determines whether the action may be maintained as a class action under Fed. R. Civ. P. 23. *See, e.g.*, *Tennille v. Western Union Co.*, 785 F.3d 422. 430 (10th Cir. 2015). Rule 23 examines four factors at class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Further, Rule 23(b) examines whether common questions predominate the dispute and whether the class action is superior to other methods.

District courts exercise "considerable discretion" in making class-certification decisions. *DG v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The Tenth Circuit defers to a trial court's certification ruling "if it applies the proper Rule 23 standard and its 'decision falls within the bounds of rationally available choices given the facts and law involved in the matter at hand.'" *Id.* (citation omitted). In the settlement context, however, the court need not inquire as to trial manageability under Rule 23(b)(3)(D). *In re Motor Fuel Temperature Sales Practices Litig.*, 271 F.R.D. 263, 269 (D. Kan. 2010).

Plaintiffs and Defendant have stipulated to: (1) the certification of the Settlement Class for settlement purposes; (2) the appointment of Plaintiffs as class representatives; and (3) the appointment of Reagan E. Bradford, Ryan K. Wilson, and Jim U. White as Co-Lead Class Counsel for the Settlement Class. *See* **Ex. 1**, Settlement Agreement at 1. Accordingly, Plaintiffs move the Court to certify a Settlement Class consisting of:

> All non-excluded persons or entities who: (1) received late payments under the PRSA from Defendant (or Defendant's designee) for oil-and-gas proceeds from

3

Oklahoma wells during the Claim Period; (2) or whose proceeds were remitted to unclaimed property divisions of any government entity by Defendant during the Claim Period; and (3) whose payments or whose unclaimed property did not include the statutory interest required by the PRSA.

Excluded from the Class are: (1) Defendant, its affiliates, predecessors, and employees, officers, and directors; (2) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (3) any Indian tribe as defined at 30 U.S.C. § 1702(4) or Indian allottee as defined at 30 U.S.C. § 1702(2); and (4) publicly traded oil and gas companies and their affiliates.

*See id*. at 10. Certification of the Settlement Class for settlement purposes furthers the interests of Class Members and Defendant by allowing this case to be settled on a class-wide basis. The proposed Settlement Class satisfies the requirements of Rule 23, and thus this Court should certify the Settlement Class.

### 1. Numerosity

Rule 23(a)(1) requires "the class [be] so numerous that joinder of all members is impracticable." *See Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (holding a class as small as 46 sufficient). Here, the Settlement Class consists of thousands of owners dispersed throughout Oklahoma and other states, making joinder of all Class Members impracticable. *See* Doc. 103 at 11; *see also Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 682 (E.D. Okla. 2019) ("the proposed class encompasses thousands of interest owners, which easily satisfies the numerosity requirement under Rule 23(a)(1)."). Plaintiffs have identified over 3,000 potential Class Members. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." A "common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Of course, "'[f]actual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist.'" *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir.1982). Plaintiffs need only show a single issue common to all members of the class. *See DG*, 594 F.3d at 1195; Newberg et al., NEWBERG ON CLASS ACTIONS § 3:10, at 272-73 (5th ed. 2011).

This Court has certified several similar class actions, finding common issues existed. *See, e.g.*, *Underwood, et al. v. NGL Energy Partners LP*, No. 21-CV-135-CVE-SH, Doc. 58 (N.D. Okla. Mar. 6, 2023) (preliminarily approving PRSA late-payment class for settlement purposes); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ, Doc. 61 (N.D. Okla. Jan. 25, 2021) (same); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ, Doc. 56 (N.D. Okla. Sept. 3, 2021) (same). So too have other federal courts in Oklahoma certified PRSA late-payment classes for settlement purposes. *See, e.g.*, *Allen, et al. v. Apache Corp.*, No. 22-CV-00063-JAR, Doc. 23 (E.D. Okla. Aug. 1, 2022); *Dasa Inv., Inc. v. EnerVest Operating, L.L.C.*, Case No. 6:18-CIV-083-SPS, 2019 WL 8163862 (E.D. Okla. Oct. 30, 2019); *McKnight Realty Co. v. Bravo Arkoma, LLC, et al.*, Case No. CIV-17-308-KEW, Doc. 53 (E.D. Okla. Sept. 6, 2018); *Reirdon v. XTO Energy Inc.*, Case No. 6:16-cv-00087-KEW, Doc. 122 (E.D. Okla. Jan. 29, 2018). Even in the context of contested class certification, the Eastern

District of Oklahoma recently certified a class for identical claims for statutory interest under the PRSA. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 683 (E.D. Okla. 2019).

Plaintiffs' PRSA claims involve questions of law and fact that can be answered uniformly for the Settlement Class using common evidence. The PRSA claims turns on whether Defendant, without first requiring demand from owners, paid owners statutory interest on payments of oil-and-gas proceeds made outside of the timeframes established by the PRSA. Plaintiffs allege that Defendant's alleged uniform practice of first requiring a demand from owners for statutory interest violates the PRSA, and that presents a common question of fact and law. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10.

### 3. Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." But "'[e]very member of the class need not be in a situation identical to that of the named plaintiff'" to meet the typicality requirement. *DG*, 594 F.3d at 1195 (citation omitted). Rather, "[p]rovided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* at 1198–99.

Plaintiffs' claims are typical of the Settlement Class's claims because Defendant allegedly treated all owners in the same manner for purposes of paying statutory interest under the PRSA. Put differently, the same legal theories and issues of fact underlie the claims of the Settlement Class and Plaintiffs because Defendant allegedly treated them uniformly. So all Class Members who received a late payment under the PRSA suffered the same injury arising

6

out of the same facts. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs satisfy typicality.

### 4. Adequacy of Representation

Rule 23(a)(4) requires plaintiffs to show they "will fairly and adequately protect the interests of the class." In the Tenth Circuit, the adequacy requirement is satisfied when (1) neither plaintiff nor its counsel has interests in conflict with the interests of other class members and (2) plaintiff will prosecute the action vigorously through qualified counsel. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188–89 (10th Cir. 2002). No conflicts exist between Plaintiffs or their counsel and other members of the Settlement Class. To the contrary, Plaintiffs share the same incentive as the Settlement Class to vigorously prosecute this case and obtain recovery.

Plaintiffs have done so, vigorously prosecuting this case through qualified counsel. Plaintiffs' Counsel are highly experienced in class actions, particularly class actions related to oil-and-gas payment claims under Oklahoma law. Plaintiffs' Counsel have been appointed as lead or co-lead counsel in multiple previous class actions, including numerous class actions in this Court.[3] Moreover, Defendant has agreed the Settlement Class should be certified for

---

[3] *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-CV-410-KEW (E.D. Okla. 2018) (Plaintiffs' Counsel appointed co-lead class counsel); *Harris v. Chevron U.S.A., Inc.*, No.19-CV-355-SPS (E.D. Okla. 2019) (same); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CV-121-RAW (E.D. Okla. 2019) (same); *Bollenbach v. Okla. Energy Acquisitions LP*, No. 17-CV-134-HE (W.D. Okla. 2018) (same); *McKnight Realty Co. v. Bravo Arkoma*, No. 17-CV-308-KEW (E.D. Okla. 2018) (same); *Speed v. JMA Energy Co., LLC*, No. CJ-2016-59 (Okla. Dist. Ct. Hughes Cty. 2019) (same); *Henry Price Tr. v. Plains Mktg.*, No. 19-CV-390-KEW (E.D. Okla. 2021) (same); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021) (same); *Johnston v. Camino Nat. Res., LLC*, No. 19-CV-2742-CMA-SKC (D. Colo. 2021) (same); *Swafford v. Ovintiv Inc., et al.*, No. 21-CV-210-SPS (E.D. Okla.) (same); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla.) (same); *McKnight Realty Co v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla.) (same); *Rounds, et al. v. FourPoint*

settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs and their counsel satisfy typicality.

### 5. Predominance

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" by asking "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted); *see also, e.g.*, *CGC Holding Co., LLC v. Hutchens, 773 F.3d 1076, 1087* (10th Cir. 2014) (same); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014) ("Classwide proof is not required for all issues. Instead, Rule 23(b)(3) simply requires a showing that the questions common to the class predominate over individualized questions."). Thus, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045 (citation omitted). Where, as here, Plaintiffs and the Settlement Class's claims stem from

---

*Energy, LLC*, No. 20-CV-52-P (W.D. Okla.); *Hay Creek Royalties, LLC v. Mewbourne Oil Co.*, No. 20-CV-1199-F (W.D. Okla.) (same); *Wake Energy, LLC v. EOG Res., Inc.*, No. 20-CV-183-ABJ (D. Wyo.) (same); *Joanna Harris Deitrich Tr. A. v. Enerfin Res. I Ltd. P'ship, et al.*, No. 20-CV-084-KEW (E.D. Okla.) (same); *Cowan v. Devon Energy Corp., et al.*, No. 22-CV-220-JAR (E.D. Okla.) (same); *Kunneman Props. LLC, et al. v. Marathon Oil Co.*, No. 22-CV-274-KEW (E.D. Okla.) (same); *Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-463 (E.D. Okla.) (same); *Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW (E.D. Okla.) (same).

a "common nucleus of operative facts," common issues predominate and certification is appropriate. *Arkalon Grazing Ass'n v. Chesapeake Operating, Inc.*, 275 F.R.D. 325, 331 (D. Kan. 2011) (citation omitted).

Again, Plaintiffs allege that Defendant systemically improperly held statutory interest owed under the PRSA by requiring owners to first demand payment for statutory interest. This alleged common conduct gave rise to each Class Member's claims, resulting in a sufficiently cohesive Settlement Class to warrant adjudication by representation. Because every Class Member's claim arises from Defendant's alleged systematic and uniform statutory interest calculation and payment methodology, common questions predominate over any individual issues. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. Plaintiffs satisfy predominance.

### 6. Superiority

Rule 23(b)(3) ensures that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In considering the superiority of a class action, courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D)." *Motor Fuel*, 271 F.R.D. at 269.

Superiority is easily satisfied here. To Plaintiffs' Counsel's knowledge, no other Class Members have filed individual actions for these PRSA claims against Defendant. Further,

concentrating the Litigation in this forum is desirable. There are no anticipated difficulties managing this case as a class action for settlement purposes only. Further, Defendant has agreed the Settlement Class should be certified for settlement purposes. *See* **Ex. 1**, Settlement Agreement at 10. This is a clear instance in which the class action is the superior method of fair and efficient adjudication.

### B.    The Court Should Grant Preliminary Approval of the Proposed Settlement

Courts strongly favor settlement as a method for resolving disputes. *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *see also Trujillo v. Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) (citing "important public policy concerns that support voluntary settlements"); *Amoco Prod. Co. v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true in large, complex class actions such as this one. *See Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001).

Rule 23(e) guides the Court to approve a class action settlement when Rule 23's requirements are met and when the settlement is fair to the class members. Proposed class action settlements follow a two-step process. *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009); *see also* MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004). **First**, the Court conducts preliminary analysis to determine if there is any reason not to notify the class or proceed with the proposed settlement. *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). **Second**, after the Court preliminarily approves the settlement, the class is provided notice and an opportunity to be heard at a final fairness hearing, at which point the Court considers whether the settlement should be finally approved. *See In re Motor Fuel*, 258 F.R.D. at 675.

10

In this Motion, Plaintiffs are asking the Court to undertake that first step. "The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel*, 258 F.R.D. at 675 (internal quotations omitted). While "[t]he standards for preliminary approval are not as stringent as those applied for final approval," courts frequently refer to the final approval factors to determine whether a proposed settlement should be preliminarily approved. *Id.* at 675–76.

Fortunately, Rule 23 provides clear factors for the Court to review at this first step. Specifically, the Court should consider:

> (A) the class representative and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-members claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The proposed Settlement checks each of these boxes.

**1. Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class**

Under this factor, the Court should consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23 advisory

11

committee notes, 2018. Plaintiffs' Counsel have engaged in substantial discovery efforts with Defendant throughout the Litigation. Plaintiffs' Counsel have obtained, reviewed, and analyzed voluminous data, including check stubs, statutory interest payments, pay detail, and accounting information for Oklahoma owners. Further, Plaintiffs and their counsel have engaged experts to review the information produced by Defendant so that the parties could appropriately consider the possibility of resolution. Plaintiffs' Counsel worked with experts in an effort to fully understand the accounting data provided by Defendant and develop a damages model. This included frequent meetings, communications, and exchanges of additional data and material between the parties and their experts.

Further, as discussed *supra*, Plaintiffs' Counsel has served as counsel in numerous prior class action settlements involving the exact PRSA claims at issue in this case. Additionally, Plaintiffs' Counsel is involved in several other currently pending putative class actions for the exact PRSA claims at issue in this case. All of that is to say, the efforts of Plaintiffs' Counsel in other cases have resulted in a collection of significant information laying the groundwork for the favorable Settlement reached in this case. The Settlement reached in this case with Defendant is on par with or exceeds settlement values reached in similar PRSA late-payment class actions. Finally, Plaintiffs have remained actively involved in this litigation since filing and have thus adequately represented the Settlement Class.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

"[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). Here, prior to reaching the Settlement, Plaintiffs' Counsel conducted extensive investigation and research into the claims asserted, reviewed extensive data, and consulted with experts. The Settlement is the product

of arm's-length negotiations between Plaintiffs and Defendant and their experienced counsel at a point when Plaintiffs and Defendant possessed more than sufficient evidence and knowledge to allow them to make informed decisions about the strengths and weaknesses of their respective cases. The Settlement reached in this case is the product of mutual, zealous advocacy, taking into the account the relative strength and weakness of each side's case. The second factor supports preliminary approval.

### 3. The Relief Provided for the Class Is Adequate, Taking into Account:

#### (i)    The Costs, Risks, and Delay of Trial and Appeal

"Although it is not the role of the Court at this stage of the litigation to evaluate the merits . . . it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact the case if it were litigated." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693–94 (D. Colo. 2006) (internal quotations omitted). As strongly as both sides feel about the merits of their stance, each side here recognizes serious questions of law and fact exist in this case.

Though the parties were able to ultimately agree to a settlement amount, they still vehemently disagree on numerous factual and legal issues. Defendant denies any wrongdoing giving rise to liability under the PRSA. *See* **Ex. 1**, Settlement Agreement at 2. Defendant has entered into this Settlement solely to eliminate the burden, expense, and distraction of further litigation. *Id.* at 3. Plaintiffs are optimistic about their chances of success at trial, but recognize there are a number of significant obstacles they would still have to overcome to achieve success on behalf of the Settlement Class. Put simply, serious questions of law and fact are still in dispute. Importantly, the meaningful Settlement renders the resolution of these questions unnecessary and provides a guaranteed recovery in the face of uncertainty.

13

      *(ii)*     ***The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Members' Claims***

The proposed distribution method for this common-fund Settlement has been proven highly effective in prior cases. Pursuant to the Settlement Agreement, Defendant will provide Plaintiffs' Counsel its payment history data for payments made by Defendant for wells located in Oklahoma, including the names, last known addresses, and tax identification numbers of persons or entities receiving those payments. *See* **Ex. 1**, Settlement Agreement at 13. The Settlement Administrator will make reasonable efforts to: (a) verify the last-known address of potential Class Members provided by Defendant and (b) locate current addresses of any potential Class Members for whom Defendant has not provided addresses. *Id.*

Subject to the Court's approval, Plaintiffs' Counsel will allocate the Net Settlement Fund to individual Class Members who are participating in the Settlement proportionately based on the amount of statutory interest owed on the original underlying payment that allegedly occurred outside the time periods required by the PRSA, with due regard for the production date, the date the underlying payment was made, the amount of the underlying payment, and the time periods set forth in the PRSA. *See* **Ex. 1**, Settlement Agreement at 20–21.

The Net Settlement Fund will be distributed by the Settlement Administrator as soon as reasonably possible after final approval has been obtained for the Settlement and any appeals are exhausted. The Settlement Agreement specifies deadlines for distributing the Net Settlement Fund. *See* **Ex. 1**, Settlement Agreement at 23–24. Plaintiffs' Counsel has had this distribution method approved and utilized in other PRSA late-payment class-action settlements. *See, e.g.*, *Underwood, et al. v. NGL Energy Partners LP*, No. 21-CV-135-CVE-SH (N.D. Okla. 2023); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla.

2021); *Deitrich v. Enerfin Resources I Limited Partnership, et al.*, No. 20-CV-084-KEW (E.D. Okla. 2022); *McKnight Realty Co. v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla. 2022); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CIV-121-RAW (E.D. Okla. 2019).

Importantly, as opposed to many other court-approved class action settlements in federal court, the Settlement Agreement doesn't require Class Members to submit claim forms in order to receive their share of the Net Settlement Fund. On the contrary, all Class Members who don't affirmatively opt-out of the Settlement will automatically receive a check without the burden of submitting a claim form. *See* **Ex. 1**, Settlement Agreement at 24.

> ### (iii) *The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment*

Under the terms of the Settlement Agreement, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees no later than twenty-eight days before the Final Approval Hearing. *See* **Ex. 1**, Settlement Agreement at 27. Plaintiffs' Counsel anticipate that they will seek a fee award of no more than forty percent of the Gross Settlement Fund. Plaintiffs' Counsel have obtained an excellent recovery for Class Members in the form of a $850,000.00 cash payment. Under the Settlement Agreement, Plaintiffs' Attorneys' Fees are to be paid to Plaintiffs' Counsel from the Gross Settlement Fund one (1) business day following the date the Judgment becomes Final and Non-Appealable. *See* **Ex. 1**, Settlement Agreement at 28.

> ### (iv) *Any Agreement Required to be Identified under Rule 23(e)(3)*

The parties have entered into the Settlement Agreement, which is submitted in full at **Exhibit 1**.

15

### 4.   The Settlement Treats Class Members Equitably Relative to Each Other

The Settlement treats Class Members equitably relative to each other. All Class Members identified will receive their proportionate share of the Net Settlement Fund based on the amount of statutory interest owed on the original underlying payment that allegedly occurred outside the time periods required by the PRSA, with due regard for the production date, the date the underlying payment was made, the amount of the underlying payment, and the time periods set forth in the PRSA. **Ex. 1**, Settlement Agreement at 20.

Because all four factors weigh in favor of the Settlement here, Plaintiffs respectfully request the Court grant preliminary approval of the Settlement.

### C.   The Court Should Preliminarily Approve the Proposed Notice of Settlement to the Settlement Class

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Additionally, Rule 23(e)(1)(B) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." In terms of content, a settlement notice need only be "reasonably calculated, under all of the circumstances, to apprise [the] interested parties of the pendency of the [settlement proposed] and [to] afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The hallmark of the notice inquiry . . . is reasonableness." *Lucas*, 234 F.R.D. at 696 (internal quotations omitted).

Plaintiffs have submitted to the Court for approval the Notice of Settlement, which includes a postcard notice, a notice for publication on the settlement website, and a summary notice that will be published in various newspapers. The Notice of Settlement documents are

16

attached to the Settlement Agreement as Exhibits 3–5. As set forth in the Settlement Agreement, Plaintiffs and Defendant have agreed that, no later than thirty (30) days after entry of the Preliminary Approval Order, or at such time as is ordered by the Court, the Court-appointed Settlement Administrator shall begin disseminating the Notice by sending a copy of the postcard Notice (Settlement Agreement, Exhibit 3) via first-class mail to the last known mailing address of each Class Member who can be identified with reasonable effort to do so and also post the Notice (Settlement Agreement, Exhibit 4) on an Internet website dedicated to the Settlement. **Ex. 1**, Settlement Agreement at 14. Plaintiffs and Defendant further agreed that the Settlement Administrator also shall publish (or cause to be published) the Notice (Settlement Agreement, Exhibit 5) one time in each of the following newspapers: (a) *The Oklahoman*, a paper of general circulation in Oklahoma; and (b) *The Tulsa World*, a paper of general circulation in Oklahoma. After mailing the postcard Notice of Settlement and continuing through the date of the Final Fairness Hearing, the Settlement Administrator also will display (or cause to be displayed) on an Internet website dedicated to this Settlement the following documents: (a) the Notice of Settlement; (b) the Complaint; (c) this Settlement Agreement; (d) the Preliminary Approval Order; and (e) other publicly filed documents related to the Settlement. *Id.* The Notices direct Class Members to this website for additional information. And, of course, these documents will also be available on the Court's docket.

In accordance with Rule 23(c)(2)(B), the proposed Notice will inform Class Members about the Litigation, the proposed Settlement, and the facts they need to make informed decisions about their rights and options in connection with the Settlement. Specifically, the Notices clearly describe: (i) the terms and operations of the Settlement; (ii) the nature and extent

17

of the release of claims; (iii) Plaintiffs' Counsel's intent to request attorneys' fees, reimbursement of expenses, and case contribution awards; (iv) the procedure and timing for objecting to the Settlement; (v) the procedure and timing for requesting exclusion; (vi) the date, time, and place of the Final Fairness Hearing; and (vii) ways to receive additional information about this Litigation and the proposed Settlement. The Notices also provide Class Members with a toll-free number and email address for Settlement-related inquiries and a URL address for the dedicated Settlement website where Class Members may obtain additional information. Thus, the Notices are reasonably calculated to apprise the interested parties of the pendency of the Settlement and afford them an opportunity to opt out or to object. As such, the form and manner of the proposed Notice meets the requirements of both Rule 23 and due process. The Court should approve the Notices and the manner through which they will be delivered and communicated to the Settlement Class.

**D.    Appointment of JND Legal Administration as Settlement Administrator Is Proper**

To accomplish the processing of requests for exclusion and the distribution of the Net Settlement Fund in accordance with a Court-approved plan of allocation and distribution, Plaintiffs respectfully requests the Court appoint JND Legal Administration ("JND") as the Settlement Administrator. JND is a leading class action administration company that has handled many complex class action settlements.[4] Further, under the terms of the Settlement Agreement, Plaintiffs, Defendant, and their Counsel will work directly with the Settlement Administrator for much of the notice, administration, and distribution processes. Accordingly, Plaintiffs respectfully request the Court appoint JND as the Settlement Administrator.

---

[4] More information about JND can be found on its website at: www.jndla.com

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court enter the agreed pro-posed Preliminary Approval Order, attached as Exhibit 1 to the Settlement Agreement (**Ex. 1**), which will: (1) certify the Settlement Class for Settlement purposes; (2) preliminarily ap-prove the Settlement; (3) appoint Plaintiffs as Class Representatives for the Settlement Class; (4) appoint Reagan E. Bradford, Ryan K. Wilson, and James U. White as Co-Lead Class Counsel for the Settlement Class; (5) approve the form and manner of the proposed Notice; (6) appoint JND Legal Administration as Settlement Administrator; and (7) set a hearing date for final approval of the Settlement and application for an award of Plaintiffs' Attorneys' Fees, Litigation Expenses and Administration, Notice, and Distribution Costs, and Case Contribu-tion Awards to Plaintiffs.

Respectfully Submitted,

*/s/ Reagan E. Bradford*
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

*–and–*

James U. White, Jr., OBA #9545
WHITE, COFFEY AND FITE, P.C.
P.O. Box 54783
Oklahoma City, Oklahoma 73154
(405) 842-7545
jwhite@wcgflaw.com
**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/Reagan E. Bradford*
Reagan E. Bradford